1998 ME 63

**Ervin L. CURTIS, et al.**

v.

**TOWN OF SOUTH THOMASTON.**

Supreme Judicial Court of Maine.

Argued March 2, 1998.

Decided March 25, 1998.

---

Randal E. Watkinson (orally), Strout & Payson, P.A., Rockland, for plaintiff.

Frederick M. Newcomb, III (orally), Rockland, for defendant.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶1] Ervin L. Curtis and Christine H. Curtis appeal from the judgment entered in the Superior Court (Knox County, *Kravchuk*, J.), contending that the Town of South Thomaston's ordinance requirement that they grant an easement to the Town for fire prevention purposes, as a condition for subdivision approval, constitutes an unlawful taking and violates due process and equal protection principles. We disagree and affirm the judgment.

I.

[¶2] In January, 1990, the Town enacted a Fire Protection Ordinance that requires a developer of a subdivision to construct a 250,000 gallon fire pond within 2,000 feet of any proposed development if no adequate water

supply exists.[1] The ordinance also requires that a "right of way or easement" be conveyed to the Town "to allow the Town to maintain and use both the pond and hydrant pumping."[2]

[¶3] The Curtises purchased land in the Town in 1993 and three years later submitted an application to the planning board seeking to subdivide their land into four lots. Their application did not provide for a fire pond. The Town approved the subdivision application subject to, *inter alia,* fulfillment of the requirement that the final plan "depict location of fire pond and access." Curtis filed a timely appeal, pursuant to M.R. Civ. P. 80B, and sought a declaratory judgment that the Fire Protection Ordinance was unconstitutional on several grounds. The Superior Court affirmed the decision of the planning board conditioning approval of the subdivision on construction of a fire pond and the grant of a dedicated easement. This appeal followed.

## II.

[¶4] The United States and Maine Constitutions provide that private property cannot be taken for public use without just compensation. U.S. Const. amend V; Me. Const. art. 1, § 21. The general takings rule is inapplicable, however, when, as in this case, the government's physical occupation of private property constitutes a requirement imposed on the land owner as a condition for the government's approval of a land development application. *See Nollan v. California Coastal Comm'n,* 483 U.S. 825, 833, 107 S.Ct. 3141, 3146, 97 L.Ed.2d 677 (1987). We review such a dedication requirement to ensure that it constitutes a lawful exercise of the police power and not an attempt by the government to "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

[¶5] The Supreme Court, in its decisions of *Nollan v. California Coastal Comm'n* and *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), developed a two-part procedure to determine when a land dedication requirement is logically related in substance and scope to legitimate regulatory objectives and thus a lawful exercise of the police power. First, we determine whether an essential nexus exists between the legitimate government interest and the permit condition required by the government entity—whether the permit condition advances the same public aim as would the permit denial. *See Nollan,* 483 U.S. at 837, 107 S.Ct. at 3148; *Dolan,* 512 U.S. at 386, 114 S.Ct. at 2317. Next, we determine whether a rough proportionality exists between the conditions imposed and the effects the proposed land use will have on the community. *See Dolan,* 512 U.S. at 388, 114 S.Ct. at 2318. The "rough proportionality" requirement cannot be satisfied by a conclusory statement made by the government authority, *id.* at 396, 114 S.Ct. at 2322; it must be the product of a "determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391, 114 S.Ct. at 2319–20.

[¶6] In this instance, the Town could have rejected the subdivision application because it did not provide "sufficient water ... for the reasonably foreseeable needs of the subdivision." 30–A M.R.S.A. § 4404(2) (1996). More specifically, the land that the Curtises wanted to develop lacked an adequately proximate supply of water for firefighting purposes; there is no public water system in the Town. The Town therefore may impose a requirement that would cure this deficiency; an essential nexus exists between the Town's interest in public safety and the permit condition. *See Nollan,* 483 U.S. at 836, 107 S.Ct. at 3148 (coastal housing commission's power to forbid construction of a house to protect a public interest

---

**1.** The ordinance further provides that an applicant may be granted a waiver from the requirements of the ordinance "if there are already existing water supplies within the proposed development or within the distance requirements."

**2.** The Curtises do not challenge the ordinance's requirement that they construct the fire pond.

includes the power to impose a condition affecting property rights that serves the same end); *See Ehrlich v. City of Culver City,* 12 Cal.4th 854, 50 Cal.Rptr.2d 242, 265, 911 P.2d 429, 452 *(Mosk, J.* concurring) (1996) (an "otherwise unconstitutional imposition of a public easement on private property derives its constitutional legitimacy from the fact that a prohibition on development is constitutionally justified").

 [¶ 7] The next determination we must make is whether a rough proportionality exists between the ordinance's easement requirement and the impact that the subdivision would have on the Town's ability to meet its public safety responsibilities. The ordinance reflects a legislative determination that the Town's fire department can meet its public safety duties only if it is provided access to fire ponds for training and maintenance purposes. Our inquiry into rough proportionality does not end at this legislative determination, but we assign weight to the fact that the easement requirement derives from a legislative rule of general applicability and not an ad hoc determination made by the planning board at the time of the pending application. *Cf. Dolan,* 512 U.S. at 385, 114 S.Ct. at 2316 ("land use regulations ... involve[ ] essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel"). Because the Town's dedication requirement is a legislative rule, this requirement more likely represents a carefully crafted determination of need tempered by the political and legislative processes rather than a "plan of extortion" directed at a particular land owner. *See Dolan,* 512 U.S. at 387, 114 S.Ct. at 2317 (internal citations omitted).

[¶ 8] Because the legislative nature of the exaction is but one factor in our takings analysis, we also examine the requirement in practice. The facts of this case demonstrate that a more than sufficient proportionality exists between the fire protection demands created by the subdivision plan and the easement requirement designed to meet these demands. The easement required by the Town is no greater than necessary to provide adequate fire protection to the subdivision contemplated by the Curtises; it ensures a clear passage to the fire pond and maintenance of the hydrant located thereon.

[¶ 9] Finally, contrary to the Curtises' contention, the easement requirement of the Town's Fire Protection Ordinance does not offend the principles of equal protection or due process.

The entry is:

Judgment affirmed.

